# ERD v PICERNE DEVELOPMENT CORPORATION

## Case No. SO-87-5660

County Court, Orange County

March 14, 1988

## APPEARANCES OF COUNSEL

**Matthew G. Brenner** for defendant.

**Joseph Thomas** for plaintiff.

## OPINION OF THE COURT

JAMES C. HAUSER, County Judge.

This cause came to be heard before this court on February 15, 1988 as a non jury trial. The facts presented to the court were that on December 15th, Mr. Erd, a tenant of the defendant had his automobile towed by Airport Towing, an agent of the defendant. The plaintiff claimed that the defendant had failed to comply with Florida law and that therefore the plaintiff should be reimbursed for the value of the car and recover his 2ttorney's fees.

### STATEMENT OF FACTS

1. Mr. Gordon Erd had been a tenant of the defendant landlord[1] since at least July 26, 1986.

---

[1] Hereinafter referred to as Sunkey Apartments.

2. In December of 1986, Mr. Erd came into possession and control of a 1966 Dodge.

3. The plaintiff admits that the vehicle was not in "perfect condition".

4. In fact the 1966 Dodge had a flat tire, because one of the tires constantly leaked air.

5. The court is persuaded that the car was in fact an eyesore to the apartment complex and had proper procedures been followed, the apartment complex would have been justified in towing the vehicle.

6. On at least two occasions, Ms. Carol Stone claimed she put written warnings on the windshield of the plaintiff's car that it would be towed.

7. Mr. Erd denied ever seeing any written notice on his windshield that his car would be towed.

8. Although Mr. Erd claimed there was a paper license plate tag in the back window of the car,[2] Ms. Stone denied ever seeing such a tag. Ms. Stone stated she inspected the car closely, but never actually went into the car.

9. Mr. Frank DiMeico is the director of Airport Towing, the company that towed Mr. Erd's vehicle.

10. On December 14th he delivered a sign, to the defendant apartment complex which warned individuals that unauthorized vehicles would be towed at the owner's expense.

11. Significantly, Mr. DiMeico was unable to testify when the warning sign was installed at the apartment complex and there was no testimony from any witness as to the time and date the sign was actually installed.[3]

12. Mr. Erd testified that the warning sign had not been installed as of December 15, 1987.

13. Even if the sign had been posted, there was no evidence as to:

a. whether the sign was posted within 5 feet of the right of way or

b. whether the letters of the sign were at least 2 inches high.

14. Mr. Alan Christie testified that he did not have an independent

---

[2] Defendant's Exhibit 4.

[3] Mr. Collelo testified testified that he had installed the sign in June of 1986, but since the sign had not been delivered until December of 1986, his testimony was not credible.

**51**

recollection of seeing the warning sign, but that he was pretty sure such a sign existed. He further testified that he normally would not tow a vehicle from an apartment complex, unless he saw a warning sign.

15. Mr. Christie testified that he saw a warning note on the windshield of the vehicle, which had been written by Ms. Stone, defendant's exhibit 5.

16. Mr. Christie further testified that he did not see a paper license plate tag in the rear window.

17. As Mr. Christie was towing the vehicle, another tenant, Karen Tomlinson told him to stop, because the vehicle belonged to Mr. Erd. However, Mr. Christie ignored her pleas and without contacting the management of the defendant, towed the vehicle.

18. Conversely, Ms. Tomlinson testified that at the time the vehicle had been towed, she did not see any warning notices attached to the vehicle.

19. However, Ms. Tomlinson also testified that she did not see Mr. Erd's paper license plate that was supposedly in the rear window of the vehicle.

20. The vehicle was towed from Sunkey Apartments to Airport Towing, a distance of 9 miles, even though there was another towing company within 5 miles of the apartment complex.

21. Although Airport Towing claimed they contacted the sheriff's office after the car had been towed, there was no evidence presented to the court who Airport Towing actually contacted.

22. On December 15th, Mr. Erd was advised by Ms. Tomlinson that his car had been towed and he went to Airport Towing to have his car released. However, Airport Towing would not release the car unless the plaintiff would pay for the towing.

23. Mr. DiMeico admitted seeing the paper license plate tag a few days after the car had been towed by Airport Towing, but denied that the tag had been in the vehicle when it had been towed on December 15th.

24. A few nights after the car had been towed, Mr. Erd went back to Airport Towing to retrieve his jumper cables. There was an inference, but no direct testimony, that Mr. Erd may have at that time placed the paper license plate in the rear view window of the vehicle.

25. The court finds the inference that Mr. Erd placed the paper license plate tag after the car had been towed without merit. Mr. Kevin Kitchen, a representative of Airport Towing, who permitted Mr. Erd

52

to get his jumper cables, testified that Mr. Erd did not use a flash light. This was in direct conflict with the testimony of Mr. Erd. The court is persuaded that a person going to a car lot of towed vehicles at night would use a flash light to avoid being injured by the other cars.

26. Mr. Erd had obtained the vehicle which had been towed, a 1966 Dodge, from Mr. William Price, because Mr. Price had lost a jet ski hood, which had been owned by Mr. Erd.

27. The price of the jet ski hood was $421.41.

28. Mr. William Price never conveyed title of the 1966 Dodge to Mr. Erd, because Mr. Price had never obtained possession of the title from the previous owner, Mr. Campbell.

29. Mr. William Price had paid $100 to Mr. Campbell for the automobile, but had put a new battery in it prior to transferring the vehicle to Mr. Erd.

30. Mr. McIntosh testified that he viewed the car, after it had been sitting at Airport Towing for one year and he valued the vehicle at between $35 and $150.

31. According to the 1980 census, the population of Orange County was 472,000.

32. According to a more recent census estimate, the population of Orange County in April of 1986 was 577,856.[4]

33. The court is persuaded that as of December, 1986, the population of Orange County exceeded 500,000.

## STATEMENT OF LAW

Fla. Stat. 715.07 requires that before a landlord may remove a motor vehicle from an apartment complex's parking lot, he must strictly comply with state law.[5] These requirements include, but are not limited to:

1. If the population of the area exceeds 500,000 or more the vehicle must be stored within 5 miles of the point of removal.[6]

2. Within 30 minutes after the car is removed, the firm towing the vehicle must notify the sheriff's department of:

---

[4] Florida Estimates of Population prepared by the Bureau of Economic and Business Research Program, College of Business Administration, University of Florida, April 1, 1986.

[5] Fla. Stat. 715.07(2)(a).

[6] Fla. Stat. 715.07(2)(a)1a.

a. the storage site;

b. the time the vehicle was towed;

c. the make, model, color and license plate number of the vehicle and

d. shall obtain the name of the person at the sheriff's department to whom such information was reported.[7]

3. Unless notice is personally given to the owner or other legally authorized person in control of the vehicle, the landlord must post a notice which complies with the following statutory requirements.[8]

a. The notice must be within five feet of a public right of way.[9]

b. The notice must state, in not less than 2 inch high light reflective letters, on a contrasting background, that unauthorized vehicles will be towed away at owner's expense.[10]

c. The sign must be continuously maintained on the property for not less than 24 hours prior to the towing.[11]

4. A party that fails to comply with the statute is liable to the owner of the vehicle for storage of the vehicle and attorney's fees.[12]

5. Fla. Stat. 715.07 applies to any registered owner or other legally authorized person in control of that vehicle.[13]

6. Fla. Stat. 319.22 states that unless otherwise provided herein, no court shall recognize the right, title, claim or interest of any person in or to any motor vehicle, unless evidenced by a certificate of title, duly issued to that person in accordance with the provisions of Fla. Stat. 319.

## CONCLUSIONS OF LAW AND FACT

It is clear from the evidence that Airport Towing, as agent for the defendant failed to comply with the strict requirements of the statute.

1. The Court finds that at the time the automobile was removed, the

---

[7] Fla. Stat. 715.07(2)(a)(3).

[8] Fla. Stat. 715.07(2)(a)(5).

[9] Fla. Stat. 715.07(2)(a)(5)a.

[10] Fla. Stat. 715.07(2)(a)(5)b.

[11] Fla. Stat. 715.07(2)(a)(5)c.

[12] Fla. Stat. 715.07(4).

[13] Fla. Stat. 715.07(2)(a).

population of Orange County exceeded 500,000. The defendant failed to comply with the statute, because the automobile was not stored within 5 miles from the area where it was towed.[14] In fact it was stored more than 9 miles away.

2. Even if the evidence was not sufficient to sustain proof the population of Orange County exceeded 500,000, the defendant still violated the statute.

a. Although there was some evidence the sign warning about towing was delivered to the defendant on December 14th, there was no evidence when the sign was installed at the apartment complex. Thus, even assuming the sign was installed at the time the car was towed on December 15th, this is not sufficient to prove the sign had been installed 24 hours prior to the towing.[15]

b. The defendant failed to prove the size of the letters of the sign complied with the statute[16] or that the sign was installed within 5 feet of the right of way.[17]

The failure to comply with the above two requirements is not a violation of the statute if the plaintiff had been personally served with notice that his vehicle would be towed. The defendant claims that by placing a written warning on the windshield of the car, this constituted personal notice to the plaintiff. The Court does not agree.

Personal notice means that the plaintiff actually received notice. The plaintiff denies ever receiving such a notice. The defendant could have proven personal notice of the notice had either been hand delivered or sent by certified mail. Clearly, placing a written notice on the plaintiff's automobile did not comply with the legislature's requirement of personal notice.

3. Even assuming all of the above were not violations, the defendant's agent failed to comply with the statute because they never obtained the name of the person at the sheriff's department who was contacted after the plaintiff's vehicle was removed.[18]

Even though the defendant clearly violated the statute, it is not altogether clear whether the statute applies to the case at bar. It was

[14] Fla. Stat. 715.07(2)(a)1a.

[15] Fla. Stat. 715.07(2)(a)5d.

[16] Fla. Stat. 715.07(2)(a)5b.

[17] Fla. Stat. 715.07(2)(a)5a.

[18] Fla. Stat. 715.07(2)(a)(3).

stipulated that when the plaintiff obtained possession and control of the vehicle, he never obtained title to the vehicle. Pursuant to the motor vehicle statute, Fla. Stat. 319.22, a court may not recognize a person's title to a vehicle without a certificate of title.

However, Fla. Stat. 715 does not just apply to registered owners, it also applies to any legally authorized person in control of that vehicle.[19] Since there is no question the plaintiff fits in the latter category, the Court rules the plaintiff is entitled to relief.

## DAMAGES

Although there was a conflict in the testimony concerning the value of the 1966 Dodge, the Court is persuaded that its value did not exceed $100. Since the amount of storage exceeds that amount, the Court does hereby order and adjudge the plaintiff is entitled to the sum of $100 for which let execution issue.

The Court does hereby reserve jurisdiction to award costs and attorney's fees.[20] If the parties are unable to agree on the amount of costs and reasonable attorney's fees, the plaintiff shall notify the Court of the amount of time necessary to conduct a hearing on this issue.

DONE and ORDERED this 14th day of March, 1988 in Orange County, Florida.

---

[19] Fla. Stat. 715.07(2)(a).

[20] Fla. Stat. 715.07(4).